JEAN PIERRE GUENIVET v. FRANK PERRET,

Where a depositor entrusts funds for use and interest into the hands of another party, and the latter keeps no separate account of the same in Bank, in the name of such depositor : *Held*, that he will be held responsible in legal currency, whatever may have been the character of the notes deposited with him.

APPEAL from the Fourth District Court of New Orleans, *Theard*, J. H. R. *Grandmont and Durant & Hornor, for plaintiff and appellant.* The defendant relies on the fact that he had funds deposited in the Bank of Louisiana in his own name, and that after the order of General Butler, dated May 16, 1862, and by which the banks of this city were directed to pay all deposits in their own bills, United States Treasury notes, gold or silver, he withdrew his deposit from said Bank of Louisiana (in notes of that institution) and made a separate bundle of the amount due plaintiff, which was labeled "Jean Pierre Guenivet." But how can this act on his part, which was done for his own private interest, without

the participation or knowledge of plaintiff, be binding on the latter? Had the plaintiff any interest in the funds thus withdrawn from the bank? Were not these funds the exclusive property of the defendant, who had at the same time his money scattered in three banks of this city? Why should the plaintiff, then, share in the loss resulting from the depreciation of the notes of one of them?

Again, is the date of the withdrawal of these funds from the bank established before the Court? and is it proven that the defendant has not made use of them before their depreciation, in his own transactions?

But admitting, for argument's sake, that there was an obligation on the part of the plaintiff to receive Louisiana bank notes in payment of his claim, then I say that a real tender of these notes in the manner pointed by law should have been made to him, (C. P. Article 407) and that without such a legal tender, followed by a consignment, in the mode pointed out by Article 413 of the same Code, the subsequent loss occasioned by the depreciation must entirely fall on the defendant. So that in either case, whether the plaintiff was bound to accept the notes of said bank or not, the result is this case would be the same.

The judgment appealed from must be reversed, and given in favor of plaintiff, payable in Treasury notes, for the sum claimed, viz: $2,647 08, with interest from judicial demand. See 12 An. p. 267, Code of Practice, Article 405 et seq. Civil Code, Article 2163, et seq. and 2146.

We rely on the following points and authorities:

1. The money collected by defendant for plaintiff, by which defendant became indebted to plaintiff, and became bound to return other money of equal quantity and value, is not a deposit, but loan for use. L. C. 2883, 2884; Story on Bailments, § 88, p. 65; Edwards on Bailments, p. 66; 17 Wendell, 100, 10 A. 342, 346.

2. In this, and in all similar cases, the property is transferred to the depositary or loanee. Troplong, Dêpot §§ 115, 116; Pothier, Contrat de Bienf, p. 71; *Melville* v. *Dodge*, 60 Eng. C. L. H. p. 455; *Pott* v. *Clegg*, 16 Exchequer Rep. 323, *United States Bank* v. *Bank of Georgia*, 10 Wheaton, 333.

3. The moneys that went into the possession of the defendant were not to be restored in the identical notes, but an equal amount in cash. They passed therefore into the hands of the defendant, and became his property.

4. In such a case, the defendant is liable for the whole amount of the debt, in dollars, and it is error in the Court to render a judgment for money payable in Bank of Louisiana notes.

5. It does not affect the case, that defendant never used the money; or that he withdrew the amount from bank, and then made a special deposit of the notes in an envelope, with plaintiff's name on it. The law is that, in commerce, as soon as the money is received, it is considered as having been put in circulation. There is not the slightest proof in this record,

that it was the intention of the parties, that defendant was to restore the identical money he received. Troplong, § 115.

*Carleton Hunt, for defendant.*—The relation between plaintiff and defendant was that of principal and agent. The contract of mandate under which they acted, requires no particular form, and to be correctly understood and interpreted, must be read by the light of the surrounding circumstances of every kind. The authority of the defendant as a mandatary, is to be inferred from his occupation as a merchant and planter, or the particular duties he performed, and the manner of their execution as well as his relations to the plaintiff. And for some ends a mandate must be express and special, but for others it need be only verbal, and as in this instance, general and indefinite. C. C. 2961, 4, 6, 9; *Miller* v. *New Orleans Canal Company*, 8 Rob. 236.

In the case before the Court, the plaintiff was saved from a total loss by the refusal of the defendant to withdraw his money when the Bank of Louisiana was paying Confederate notes only. It is notorious that other agents at the same time pursued a different course, accepting the return of their deposits in Confederate currency, and that their conduct was followed by calamitous consequences. But in this they were guilty of no fault, and are certainly not chargeable with neglect; neither would an action in favor of a principal to recover for losses so sustained lie against any one of them.

The plaintiff was favored by fortune. Where nearly every other purse suffered, or was entirely lost, his escaped uninjured. And the evidence contained in the record establishes that the prudent and successful course of Perret was afterwards ratified by the plaintiff, who, on the 16th of June, 1862, applied to the defendant for $600, and himself received that sum in notes of the Bank of Louisiana, and then relieved the defendant of the agency.

On the trial in the lower Court no explanation was attempted of these acts of the plaintiff. Had he disapproved of the conduct of the defendant, it is clear he would not have received Bank of Louisiana notes from him, and at the same time relieved him of his agency; or he would at least have returned the notes within a reasonable delay, and make known his disapprobation. He cannot play fast and loose, and was bound to make his election. The acts of a principal are liberally construed in favor of a ratification; he cannot adopt a transaction in part, but must endorse it as a whole or reject it altogether; and if the ratification be established for a part, it will operate as a confirmation of the entire business concerned. Neither can he avail himself of the acts of his agent while he thinks it to his advantage to do so; settling with and relieving him altogether, so as to terminate their connection and relation, as in this instance; and afterwards repudiate his own conduct, because its consequences turn out to be adverse. C. C. 1811; Story on Agency, § 250; *Flower* v. *Jones*, 7 N. S.

143; *Duprè* v. *Splane*, 16 La. 51; *Ward et al.* v. *Warfield et al.*, 3 An. 468, and numerous cases there cited.

But, if for the sake of argument, it is conceded that this reasoning and these authorities are inapplicable to the case at bar, on the ground that the ratification of Perret's acts by the plaintiff, and the termination of the agency, do not sufficiently appear; and it is agreed that the contract of mandate continued uninterruptedly between the parties, the well ascertained principles of law which regulate that contract, furnish the defendant with a thorough vindication of his conduct, and support the defence he has here set up.

In treating of the obligations of a person acting under a power of attorney, the Civil Code provides :

"The attorney is responsible, not only for unfaithfulness in his management, but also for his fault or neglect. Nevertheless, the responsibility with respect to faults, is enforced less rigoursly against the mandatary acting gratuitously, than against him who receives a reward." C. C. 2972. And the Code Napoleon contains the same provisions. Code Nap. Article 1992.

Troplong, in explaining the Article of the Code, says :

"Ainsi. les magistrats pourront prendre conseil, de l'équité; dans le cas de mandat gratuit, ils verront si le mandataire qui rend un service d'ami doit autre chose que les soins qu'il donne à ses propres affaires, et si une responsabilité plus sévère ne doit pas être réservée pour le mandataire qui reçoit une rétribution, ou pour celui qui a fait l'officieux et, par ses promesses, a empêché le mandat de choisir un représentant capable. Troplong, Du Mandat, No. 393.

And Duranton, after noting the fact that the ancient Roman law upheld the doctrine of the responsibility of the mandatary, with great severity, observes:

"Mais le Code, évidemment, s'est éloigné de ces principes rigoureux; car si, dans tel cas donné, le mandataire doit répondre de sa faute, parce qu'il reçoit un salaire, il est bien clair qu'il n'en devrait pas répondre si le mandat était gratuit, autrement la circonstance qu'il y a un salaire serait absolument indifférente, et cependant les rédacteurs du Code veulent qu'on y ait égard; d'où il faut conclure, ainsi que nous l'avons dit souvent dans cet ouvrage, que, même sous le Code, il y a des degrés dans les fautes, ou, si l'on veut, des cas où le juge doit y avoir égard, et des cas où il n'en doit pas faire la base d'une condamnation à des dommages-intérêts." Duranton, Droit Français, vol. 18, pp. 232, 233.

It is to be observed, that the Article of the Napoleon Code here referred to, and the reasoning of Troplong and Durant on thereon, pre-suppose the commission of some fault on the part of the unsalaried mandatary, to which indulgence is extended because his services are gratuitously rendered; and, a fortiori, from the same spirit of natural equity it follows that, where no fault whatever has been committed, as in the case at bar,

and there appears to be only such an error of judgment on the part of the mandatary, in favor of the issue of a bank of the highest credit, as could have been avoided, under the circumstances, by infallibility alone, that there is no consequent liability.

Our own jurisprudence on this subject is well settled, and has wisely provided for the very class of cases to which that before the Court belongs. In this respect our law contains provisions not to be found in the French Code.

The Code of 1808 says: "In case of an indefinite power, the attorney cannot be sued for what he has done with good intention. The Judge must have regard to the nature of the affair, and the difficulty of communication between the principal and the attorney." Old Code, chap. 3, Article 20, p. 424; and Article 2975, of the Code of 1825, is a repetition of this Article of the Code of 1808.

In the case of *Madeira et al,* v. *Townsley et al.* Judge Porter, in delivering the opinion of the Supreme Court, laid down the principle which regulates the responsibility of the compensated mandatary, as follows:

"The degree of diligence which is required of an agent who receives compensation for the business he transacts, is that which a prudent man pays to his own affairs, what is called in law ordinary diligence, and which, of course, creates a responsibility for ordinary neglect." 12 Martin Rep., p. 87. And this reasoning, as has been already indicated, applies with increased force to the case of the gratuitous mandatary, who falls into natural and unavoidable errors of judgment.

The same learned Judge, in the later case of *Percy* v. *Millaudon,* after an elaborate discussion of the principles of the law of mandate, defined the duties and liability of the mandatary as follows:

"But, when the person who is appointed attorney in fact has the qualifications necessary for the discharge of the ordinary duties of the trust imposed, we are of opinion that, on the occurrence of difficulties in the exercise of it, which offer only a choice of measures, the adoption of a course from which loss ensues, cannot make the agent responsible, if the error was one into which a prudent man might have fallen. The contrary doctrine seems to us to suppose the possession, and require the exercise, of perfect wisdom in fallible beings. No man would undertake to render a service to another on such severe conditions." 8 N. S. 74. See also the cases of *Dupré* v. *Splane,* 16 La., p. 54, and *Ward et al.* v. *Warfield et al.,* 3 A. p. 468, already referred to.

The correct application of these decisions to the circumstances of the case before the Court, leaves no room for doubt that the defendant has not incurred any liability to the plaintiff. When he deposited the plaintiff's money in the Bank of Louisiana, he put his own there also. If his own business prospered, he made twenty-five per cent. profit for the plaintiff at the same time; and when, at a most critical period in the late great civil war, when values were unsettled, and all financial calculations,

however skillful, failed, and in the progress of which the Bank of Louisiana itself succumbed, he withdrew plaintiff's funds in bank notes of that institution, then and long afterwards at par; he did exactly what, as a prudent father of a family, he thought proper to do at the same time for himself, and to protect his own interests.

The defendant now submits this case with confidence to the judgment of the Court. The demand of the plaintiff is unreasonable, and finds no warrant in the facts which have been established, or in correct principles of law. It is impossible to render services free from human error, and this suit shows that the plaintiff required such; he must therefore fail. These views were deemed so correct by the Judge below, that he felt no hesitation in expressing his warm approval of defendant's conduct, and promptly gave judgment according to his prayer, without even taking the matter under advisement. The language of Dr. Paley, which is quoted with approval by Story (Story on Bailments, § 182), furnishes the only just and true rule in such cases :

"Whoever (says Paley) undertakes another man's business, makes it his own; that is, promises to employ upon it the same care, attention and diligence, that he would do if actually his own; for he knows that the business is committed to him with that expectation. And he promises no more than this."

LABAUVE, J. The plaintiff claims of the defendant the sum of $2,647 08, as a balance due by defendant to him for services rendered as a gardener for a number of years up to the 30th of November, 1864, as shown by an account rendered.

The answer contains first, a general denial, but admits that the defendant has in his possession in notes of the Bank of Louisiana, the sum of $2,647, as shown by several accounts current, rendered from time to time, and by plaintiff acquiesced in ; and that said bank notes have been kept to his order, and have been tendered to him and refused. The said sum in Louisiana Bank notes, was deposited by defendant in Court as a tender.

After hearing the evidence, the Court below decreed that plaintiff recover of the defendant the sum of $2,647, in notes of the Bank of Louisiana, and that plaintiff pay costs.

The plaintiff took this appeal.

The evidence shows that the plaintiff was employed by defendant for eight or nine years as gardener and overseer, and that defendant invested his money by loaning it at interest or buying paper, and rendered him generally accounts current of his position with credits and debits, showing what amount was in his hands, in individual notes and cash. The accounts current rendered successively by defendant to plaintiff, showing balances cash in his hands, are as follows :

26

On the 5th March, 1858, balance, in cash....................$1,317 25
" " 19th February, 1859, " " " ................. 279 89
" " 10th March, 1860 " " " ................. 391 19
" " 8th July, 1863, 31st December, 1862................ 2,647 08

On the 12th March, 1864, he rendered another account, commencing by crediting the plaintiff with the above balance in his hands on the 31st December, 1862, as follows :

"Reste à son avoir à ce jour et à sa disposition, en billets de la Banque de la Louisiane $2,647 08.

In the account rendered, 8th July, 1863, where the above balance figures as being in his hands, 31st December, 1862, there is not a word about its being in notes of the Louisiana Bank. He says : Reste à son avoir, 31 Décembre 1862, $2,647 08.

On the 28th November, 1864, the defendant wrote a letter to the plaintiff, stating that the balance in his hands, consisting in notes of the Bank of Louisiana, as per last account rendered, was at his disposition and risks and perils.

All these balances struck by these accounts current so rendered, constituted the relations of creditor and debtor between the parties. The only doubt, as to the currency with which the balances should be paid, is raised by the account rendered, 12th March, 1864, where the defendant says :

31 Décembre, 1862. Reste à son avoir à ce jour, et à sa disposition, un billet de la Banque de la Louisiane, $2,647 08.

But this restriction of the mode of payment is contradicted by the account rendered 8th July, 1863, striking that very balance as in the hands of defendant, where it is said : "31 Décembre, 1862. Reste à son avoir, $2,647 08."

It is in evidence that plaintiff cannot sign his name, that he can read printed matter, but not hand-writing. We believe, under the circumstances, that the plaintiff is not bound by this last account, the contents of which it seems he did not know, as shown by the testimony. The plaintiff had no particular funds in the hands of the defendant, who had at the time, accounts with other banks than the Bank of Louisiana, and there was no separate account in the name of the plaintiff; whatever money plaintiff had in the hands of the defendant, created simply a common indebtedness, and not a special deposit of any distinct funds. The judgment of the District Court must be reversed.

It is therefore ordered, adjudged and decreed, that the judgment appealed from be annulled and avoided. It is further ordered, adjudged and decreed that the defendant, Frank Perret, pay to the plaintiff, Jean Pierre Guenivet, the sum of twenty-six hundred and forty-seven dollars, with legal interest, from judicial demand, to wit : from the 30th of December, 1864, until paid, and costs in both Courts.